IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                        )
ROCKY MOUNTAIN CLEAN AIR ACTION        )        Civil No. 1:06-cv-01419-RMC
1536 Wynkoop, Suite B501                         )
Denver, Colorado 80202,                          )
                                                        )
JEREMY NICHOLS                                   )
1536 Wynkoop, Suite B501                         )
Denver, Colorado 80202,                          )
                                                        )
        Plaintiffs,                                     )
                                                        )
            v.                                          )
                                                        )
STEPHEN L. JOHNSON, in his official            )
Capacity as Administrator, United States      )
Environmental Protection Agency,               )
Ariel Rios Building                                )
1200 Pennsylvania Avenue, N.W.                 )
Washington, DC 20460,                            )
                                                        )
        Defendant.                                     )
_____)

**FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

**I.        INTRODUCTION**

1.

Plaintiffs Rocky Mountain Clean Air Action ("Clean Air Action") and Jeremy Nichols

challenge the failure of Defendant Stephen L. Johnson, in his official capacity as Administrator

of the Environmental Protection Agency ("EPA"), to perform his non-discretionary duties under

the Clean Air Act, 42 U.S.C. §§ 7401-7671q.  Specifically, Title V of the Clean Air Act

establishes a mandatory 60-day deadline for Defendant to grant or deny a citizen petition for an

objection to a Clean Air Act Title V permit.  42 U.S.C. § 7661d(b)(2).  Defendant has failed to

meet this deadline with respect to a petition filed by Plaintiffs seeking EPA's objection to a

Clean Air Act operating permit for the Denver Regional Landfill (South) Inc. ("Denver

Landfill") and a petition filed by Plaintiffs seeking EPA's objection to a Clean Air Act operating

permit for the to Pope and Talbot, Inc. lumber mill ("Pope and Talbot") in Spearfish, South

Dakota.  Plaintiffs filed their Denver Landfill petition on March 8, 2006 and their Pope and

Talbot petition on April 6, 2006.  Despite the passage of over 60 days in each instance,

Defendant has not responded to Plaintiffs' petitions.


## II.     JURISDICTION, VENUE AND NOTICE

2.

        This is a Clean Air Act citizen suit.  Thus this Court has subject matter jurisdiction over

the claims set forth in this complaint pursuant to 42 U.S.C. § 7604(a)(2), and has authority to

award attorney fees pursuant to 42 U.S.C. § 7604(d).  The Clean Air Act is a federal statute.

Thus, this Court also has subject matter jurisdiction over the complaint pursuant to 28 U.S.C. §

1331 (federal question).  An actual controversy exists between the parties.  This case does not

concern federal taxes, is not a proceeding under 11 U.S.C. §§ 505 or 1146, and does not involve

the Tariff Act of 1930.  Thus this Court has authority to order the declaratory relief requested

under 28 U.S.C. § 2201.   If the Court orders declaratory relief, 28 U.S.C. § 2202 authorizes this

Court to issue injunctive relief.

3.

        A substantial part of the alleged events or omissions giving rise to Plaintiffs' claims

occurred in the District of Columbia.   In addition, Defendant Stephen Johnson officially resides

in the District of Columbia.  Thus, venue is proper in this Court pursuant to 28 U.S.C. § 1391(e).

4.

On May 22, 2006, Plaintiffs mailed a letter via certified mail to Defendant Stephen L. Johnson stating that Plaintiffs intended to sue Defendant for failure to respond to Plaintiffs' petition for an objection to the Denver Landfill Title V permit within 60 days. On May 30, 2006 EPA sent Plaintiffs a letter confirming EPA received Plaintiffs' letter dated May 22, 2006.

5.

On June 16, 2006, Plaintiffs mailed a letter via certified mail to Defendant Stephen L. Johnson stating that Plaintiffs intended to sue Defendant for failure to respond to Plaintiffs' petition for an objection to the Pope and Talbot Title V permit within 60 days. Plaintiffs received a delivery confirmation noting that Defendant received their notice letter on June 20, 2006.

6.

More than 60 days have passed since Defendant received Plaintiffs' notice of intent to sue letters. Defendant has not acted to remedy the violations alleged in this Complaint. Therefore, an actual controversy exists between the parties.

## III.    PARTIES

7.

Plaintiff ROCKY MOUNTAIN CLEAN AIR ACTION ("Clean Air Action") is a non-profit corporation with its headquarters in Denver, Colorado. Clean Air Action is actively involved in environmental protection advocacy as part of its mission to protect clean air in Colorado and the surrounding Rocky Mountain region for the health and sustainability of local

communities.  As one method of achieving its organizational mission, Clean Air Action

participates in permitting procedures for facilities that emit pollution.  Clean Air Action

commented on the Denver Landfill Title V permit and the Pope and Talbot Title V permit.

Clean Air Action's organizational interest in participating in and influencing the permit decision-

making process is injured by EPA's failure to respond to Clean Air Action's Denver Landfill and

Pope and Talbot petitions.

8.

Clean Air Action's members and volunteers live, work, recreate, garden and engage in

economic activities in and around Metro-Denver, and will continue to do so on a regular basis in

the future. As a result, Clean Air Action's members and volunteers breathe air and recreate in an

environment containing pollutants released by Denver Landfill.  Emissions from Denver Landfill

are causing harm to their health and to the ecosystems in which they live, work and recreate, and

will continue to do so in the future.  Because Defendant has not responded to their petition,

Clean Air Action's members and volunteers cannot be certain that Denver Landfill's Title V

permit conforms to the Clean Air Act's requirements.  EPA's failure to respond thus prevents

Clean Air Action's members and volunteers from being certain that the Denver Landfill Title V

permit protects them from exposure to pollutants emitted by that facility which are in excess of

legal limits.

9.

Clean Air Action's members and volunteers live, work and recreate in the Spearfish,

South Dakota area, and will continue to do so on a regular basis in the future.  As a result, Clean

Air Action's members and volunteers breathe air and recreate in an environment containing

pollutants released by Pope and Talbot.  Emissions from the Pope and Talbot mill are causing

harm to the health of Clean Air Action's members and volunteers and to the ecosystems in which they live, work and recreate, and will continue to do so in the future. Because Defendant has not responded to their petition, Clean Air Action's members and volunteers cannot be certain that Pope and Talbot's Title V permit conforms with the Clean Air Act's requisite pollution limits. Defendant's failure to respond thus prevents Clean Air Action's members and volunteers from being certain that the Pope and Talbot Title V permit protects them from exposure to pollutants emitted by that facility which are in excess of legal limits.

10.

Plaintiff JEREMY NICHOLS is a resident of Denver Colorado who is an avid bicyclist, outdoor enthusiast, and father of a four year old son. Mr. Nichols is deeply concerned about air quality and its effects on the health and welfare of people, plants, and animals.

11.

EPA's failure to respond to the Denver Landfill petition adversely affects Mr. Nichols. Denver Landfill adversely affects, and will continue to do so on a regular basis, the air that Mr. Nichols and his son breathe by releasing nitrogen oxides, volatile organic compounds, and other pollutants. EPA has identified these pollutants as threats to human health and welfare.

12.

Mr. Nichols and his family regularly visit and enjoy Spearfish, South Dakota, and plan to do so regularly in the future. Mr. Nichols has visited and plans to visit regularly in the future the Spearfish city campground and Black Hills National Forest lands directly to the south of the town of Spearfish. Air quality in and around Spearfish, South Dakota is influenced by pollution from the Pope and Talbot lumber mill. The mill emits thousands of tons of pollutants into the air each year, including particulate matter and hazardous air pollutants, which EPA has identified as

5

threats to human health and welfare.  The Pope and Talbot mill thus has an adverse effect on the air that Mr. Nichols and his son breathe when they are near Spearfish, South Dakota. Additionally, the pollution from the Pope and Talbot lumber mill interferes with Mr. Nichols' and his family's ability to enjoy the Black Hills National Forest and surrounding areas.  Mr. Nichols' recreational, aesthetic and spiritual interests in camping, hiking, and viewing wildlife such as Black Hills mountainsnails and American dippers in the vicinity of the Pope and Talbot lumber mill are now, and will continue to be, adversely affected by the air pollution emitted by that facility.  Mr. Nichols has observed air pollution, in the form of visible emissions from the mill, on several occasions during his visits to the area, and finds this air pollution displeasing.

13.

Mr. Nichols' interests in protecting the air that he and his son breathe, in bicycling and recreating in a healthy environment, and in protecting clean air for other people, plants, and animals are adversely affected by EPA's failure to timely respond to his petition.  Moreover, if the Denver Landfill and Pope and Talbot Title V permits do not comply with the Clean Air Act, Mr. Nichols will be exposed to pollutants from those facilities which are in excess of legal levels.  EPA's failure to respond thus prevents Mr. Nichols from being certain that the Denver Landfill and Pope and Talbot Title V permits protect him from exposure to pollutants emitted by that facility which are in excess of legal limits.

14.

For the foregoing reasons, EPA's failure to respond to Plaintiffs' petitions has caused, is causing, and unless this Court grants the requested relief, will continue to cause Plaintiffs concrete injuries, which are traceable to EPA's failure to act and will be redressed by EPA's action.

15.

Defendant STEPHEN L. JOHNSON is the Administrator of the Environmental

Protection Agency.  The Administrator is responsible for implementing the Clean Air Act,

including the requirement to grant or deny Plaintiffs' petitions within 60 days.


## IV.  LEGAL BACKROUND

### Title V

16.

The Clean Air Act aims "to protect and enhance the quality of the Nation's air

resources."  42 U.S.C. § 7401(b)(1).  To help meet this goal, the 1990 amendments to the Clean

Air Act created an operating permit program that applies to all major sources of air pollution –

the Title V permit program.  See 42 U.S.C. §§ 7661-7661f.

17.

A primary purpose of the Title V permitting program is to reduce violations of the Clean

Air Act and improve enforcement by recording in one document all of the air pollution control

requirements that apply to a source of emissions.  See New York Public Interest Research Group

v. Whitman, 321 F.3d 316, 320 (2d Cir. 2003).  Major sources of air pollution cannot legally

discharge pollutants into the air unless they have a valid Title V operating permit.  42 U.S.C. §

7661a(a).

18.

The Clean Air Act provides that the Administrator of EPA may approve states' programs

to administer the Title V permitting program with respect to sources within their borders.  42

U.S.C. § 7661a(d).  The Administrator approved Colorado's Title V permit program.  65 Fed.

Reg. 49,919 (Aug. 16, 2000). The Colorado Department of Public Health and Environment,

Air Pollution Control Division ("APCD") is responsible for issuing Title V permits in Colorado.

The Administrator approved South Dakota's Title V permit program. 61 Fed. Reg. 2720 (Jan.

29, 1996). The South Dakota Department of Environment and Natural Resources ("DENR") is

responsible for issuing Title V operating permits in South Dakota.

19.

Before a Title V permit can be issued by a state with an approved Title V permit

program, the State must forward the proposed Title V permit to EPA. 42 U.S.C. §

7661d(a)(1)(B). EPA then has 45 days in which it can review the proposed permit. EPA must

object to the issuance of the permit if EPA finds that the permit does not comply with all

applicable provisions of the Clean Air Act. 42 U.S.C. § 7661d(b)(1). However, EPA does not

review most proposed Title V permits forwarded to it by state permitting agencies.

20.

After EPA's 45-day review period, "any person may petition the Administrator within 60

days" to object to the Title V permit. 42 U.S.C. § 7661d(b)(2).

21.

Once it receives a petition for objection to a Title V permit, EPA must grant or deny that

petition within 60 days. Id.; New York Public Interest Research Group v. Whitman, 214 F.

Supp. 2d 1, 2 (D.D.C. 2002).

## VI. STATEMENT OF FACTS

# BACKGROUND

## Denver Regional Landfill (South) Inc.

22.

Denver Regional Landfill (South) Inc. ("Denver Landfill") is a municipal solid waste landfill located in Erie, Weld County, Colorado.  Denver Landfill is located within 100 kilometers of the Rocky Mountain National Park and the Rawah Wilderness Area, which are Federal Class I areas.

23.

Denver Landfill emits volatile organic compounds, particulate matter, sulfur dioxide, nitrogen oxides and hazardous air pollutants including mercury.

24.

Colorado APCD issued a draft Title V operating permit to Denver Landfill (Permit No. 03OPWE254) and granted the public a 30- day period to comment on this draft permit.

25.

Plaintiffs submitted written comments on the Denver Landfill Title V permit to Colorado APCD on July 29, 2005 and December 9, 2005.

26.

Colorado APCD subsequently proposed the Denver Landfill Title V permit to EPA for review on December 28, 2005.

27.

EPA did not object on its own initiative to the Denver Landfill Title V permit during its 45-day review period.  This 45-day period expired on or around February 11, 2006.

28.

Pursuant to 42 U.S.C. § 7661d(b)(2), Plaintiffs thus had until on or around April 11, 2006, to petition EPA for an objection to the permit. EPA received Plaintiffs' petition for an objection to the permit on no later than March 17, 2006.

29.

The petition raised four issues with respect to the Denver Landfill Title V permit; (1) insufficient public comment procedures, (2) failure to ensure compliance with new source performance standards, (3) inadequacies in startup, shutdown and malfunction plan requirements for hazardous air pollutants and (4) flaws in APCD's analysis of the emission limitations' impacts on ambient air quality. Each of Plaintiffs' four arguments was raised with reasonable specificity in Plaintiffs' comments to Colorado APCD during the initial public comment period.

30.

EPA had until no later than May 16, 2006 to grant or deny the Denver Landfill Title V petition. 42 U.S.C. § 7661d(b)(2). However, EPA neither granted nor denied the petition within the statutory 60 day period. EPA still has not granted or denied the petition as of date of filing this Complaint.

**Pope and Talbot, Inc. Lumber Mill**

31.

Pope and Talbot, Inc. operate a lumber mill and wood pellet mill in Spearfish, South Dakota, which processes logs to produce lumber, wood by-products and wood pellets. Through this process, the facility emits particulate matter, sulfur dioxide, volatile organic compounds, nitrogen oxides, carbon monoxide and hazardous air pollutants.

32.

South Dakota DENR issued a draft Title V operating permit to Pope and Talbot (Permit No. 28.4401-09) and granted a public comment period on this draft permit.

33.

Plaintiffs submitted written comments on the Pope and Talbot Title V permit to South Dakota DENR on November 11, 2005.

34.

South Dakota subsequently proposed the Pope and Talbot Title V permit to EPA for review on December 22, 2005.

35.

EPA did not object on its own initiative to the Pope and Talbot Title V permit during its 45-day review period, which expired on or around February 6, 2006.

36.

Pursuant to 42 U.S.C. § 7661d(b)(2), Plaintiffs thus had until no earlier than April 6, 2006, to petition EPA for an objection to the permit. Plaintiffs submitted their petition for an objection on April 6, 2006.

37.

The petition raised six issues with respect to the Pope and Talbot Title V permit. First, the permit fails to ensure compliance with carbon monoxide limits. Second, the permit fails to ensure compliance with the South Dakota SIP and Title V permitting procedures for modifications. Third, the opacity monitoring required by the permit is not sufficient to ensure compliance with the applicable limits and continuous monitoring requirements. Fourth, the permit fails to require prompt reporting of permit deviations. Fifth, the permit fails to include Maximum Achievable Control Technology ("MACT") as an applicable requirement. Sixth,

several permit conditions are unenforceable.  Each of Plaintiffs' six arguments was raised with reasonable specificity in Plaintiffs' comments to the South Dakota DENR during the initial public comment period.

38.

EPA had until no later than June 11, 2006 to grant or deny the Pope and Talbot Title V petition.  42 U.S.C. § 7661d(b)(2).  However, EPA neither granted nor denied the petition within the statutory 60 day period.  EPA still has not granted or denied the petition as of the date of filing of this Complaint.

## VII.  CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### FAILURE TO RESPOND TO PLAINTIFFS' PETITION FOR OBJECTION TO THE DENVER LANDFILL TITLE V PERMIT

### (42 U.S.C. § 7661d(b)(2))

39.

Each allegation set forth in the Complaint is incorporated herein by reference.

40.

EPA has a mandatory duty to respond within 60 days to Plaintiffs' petition requesting that EPA object to the Denver Landfill Title V Operating Permit pursuant to 42 U.S.C. § 7661d(b)(2) ("The Administrator shall grant or deny such petition within 60 days after the petition is filed").

41.

It has been more than 60 day since EPA received Plaintiffs' petition requesting EPA object to the Denver Landfill Title V permit.

42.

Defendant has not granted or denied Plaintiffs' Denver Landfill Title V petition.

43.

Defendant's failure to grant or deny the petition constitutes a failure to perform an act or duty that is not discretionary with Defendant within the meaning of Clean Air Act § 304(a)(2). 42 U.S.C. § 7604(a)(2).

44.

Therefore, EPA has violated, and remains in violation of, its non-discretionary duty to grant or deny Plaintiffs' petition within 60 days, as required by 42 U.S.C. § 7661d(b)(2).


SECOND CLAIM FOR RELIEF

FAILURE TO RESPOND TO PLAINTIFFS' PETITION FOR OBJECTION TO THE POPE AND TALBOT TITLE V PETITION

(42 U.S.C. § 7661d(b)(2))

45.

Each allegation set forth in the Complaint is incorporated herein by reference.

46.

EPA has a mandatory duty to respond within 60 days to Plaintiffs' petition requesting that EPA object to the Pope and Talbot Title V Operating Permit pursuant to 42 U.S.C. §

7661d(b)(2) ("The Administrator shall grant or deny such petition within 60 days after the petition is filed").

47.

It has been more than 60 days since EPA received Plaintiffs' petition for an objection to the Pope and Talbot Title V permit.

48.

Defendant has not granted or denied Plaintiffs' Pope and Talbot petition.

49.

Therefore, EPA has violated, and remains in violation of, its non-discretionary duty to grant or deny Plaintiffs' petition within 60 days, as required by 42 U.S.C. § 7661d(b)(2).


**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court grant the following relief:

A)    Declare that Defendant's failure to grant or deny Plaintiffs' petition for an objection to the Denver Landfill Title V permit constitutes a failure to perform an act or duty that is not discretionary with the Defendant within the meaning of 42 U.S.C. § 7604(a)(2);

B)    Declare that Defendant's failure to grant or deny Plaintiffs' petition for an objection to the Pope and Talbot Title V permit constitutes a failure to perform an act or duty that is not discretionary with the Defendant within the meaning of 42 U.S.C. § 7604(a)(2);

C)    Order the Defendant to grant or deny Plaintiffs' petitions for an objection to the Denver Landfill and Pope and Talbot Title V permits in accordance with an expeditious schedule prescribed by the Court;

D)    Retain jurisdiction over this action to ensure compliance with the Court's Order;

E)      Award Plaintiffs their costs of litigation, including reasonable attorney fees; and

F)      Grant such other relief as the Court deems just and proper.

                                    Respectfully submitted,

                                    _____/s_____
                                    Robert Ukeiley (MD14062)
                                    Law Office of Robert Ukeiley
                                    433 Chestnut Street
                                    Berea, KY 40403
                                    Tel: (859) 986-5402
                                    Fax: (859) 986-1299
                                    E-mail: rukeiley@igc.org

                                    Counsel for Plaintiffs

DATED:  August 22, 2006