## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                              )
ROCKY MOUNTAIN CLEAN AIR ACTION,              )
et al.,                                       )
                                              )
        Plaintiff,                            )
                                              )
        v.                                    )          Civ. No. 1:06-cv-1419 (RMC)
                                              )
STEPHEN L. JOHNSON, in his official capacity  )
as Administrator, United States Environmental )
Protection Agency,                            )
                                              )
        Defendant.                            )
_____)

### DEFENDANT'S STATEMENT OF MATERIAL FACTS  NOT IN DISPUTE IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT AS TO REMEDY

Defendant Stephen L. Johnson, in his official capacity as Administrator, United States Environmental Protection Agency ("EPA"), respectfully submits the following material facts are not in dispute.

1.      On April 6, 2006, Plaintiffs Jeremy Nichols, Rocky Mountain Clean Air Action, and others petitioned the EPA to object to the proposed Clean Air Act ("CAA") Title V operating permit for Pope and Talbot, Inc. lumber mill.  Declaration of Gregory Green, Jan. 24, 2007 ("Green Decl.), at ¶ 9.

2.      EPA has not yet responded to Plaintiffs' petition regarding the Pope and Talbot Title V operating permit, as required by CAA section 505(b)(2), 42 U.S.C. § 7661d(b)(2).  Defendant's Answer to First Amended Complaint ("EPA Ans."), at ¶ 47.

3.      On August 22,  2006, Plaintiffs Rocky Mountain Clean Air Action and Jeremy Nichols filed a citizen suit pursuant to CAA section 304(a)(2), based upon EPA's failure to respond to Plaintiff's petition identified in paragraph 9  above.  See First Amended Complaint.

4.     The issues raised by the petition in this case involve major legal, policy and technical issues relating to the administration and enforcement of Title V permits and the applicability of certain emissions standards to the facility at issue.  Green Decl. ¶ 11.  The petition alleges, in part, that the February 15, 2006 Pope and Talbot, Inc. renewed and modified Title V permit fails to: (1) ensure compliance with Carbon Monoxide (CO) emissions limits; (2) require sufficient periodic monitoring of CO emissions; (3) comply with Title V and South Dakota's State Implementation Plan (SIP) permit modification requirements; (4) require sufficient opacity monitoring; (5) require prompt reporting of deviations; and (6) adequately support the determination that the facility is not subject to Maximum Achievable Control Technology  ("MACT") requirements for emissions of hazardous air pollutants.  Id.

5.     In acting upon petitions to object to Title V permits, the relevant Regional Office, the Office of General Counsel (OGC), the Office of Enforcement and Compliance Assurance (OECA), and the Office of Air Quality Planning and Standards (OAQPS) participate in and coordinate the development of the response.  Id. ¶ 15.

6.     The relevant Region is responsible for initially reviewing the petition and for preparing a recommended decision package for the Administrator's signature.  The Regional Office may in its discretion seek further information, including the solicitation of additional facts from petitioners, source owner or operators, or the permitting authority, to reach a recommended conclusion on the merits of the petition.  Id. ¶ 16.

7.     EPA receives an average of 20 Title V petitions per year.  During 2006, EPA received 15 petitions and issued orders responding to 12 petitions.  Id. ¶ 6.

8.     Between April 2006, when the petition at issue in this case was filed, and January 2007, in addition to resources spent on the Title V petitions mentioned in paragraph 5,

significant OAQPS resources have been devoted to, among other things, meeting court-ordered

and consent decree deadlines to issue the following:

- Proposed New Source Performance Standard (NSPS) For Spark Ignition Engines
- Final NSPS for Compression Engines
- Final Dry Cleaning Residual Risk Rule
- Final National Ambient Air Quality Standards (NAAQS) for Particulate Matter
- Control Technique Guidelines for Group II Consumer or Commercial Product Categories on the CAA Section 183(e) list.
- Proposed NSPS for Equipment Leaks of VOC in the Synthetic Organic Chemical Manufacturing Industry
- Proposed NSPS for Equipment Leaks of VOC in Petroleum Refineries
- Proposed National Emission Standards for Hazardous Air pollutants (NESHAP) for Gasoline Distribution Bulk Terminals,  Bulk Plants, Pipeline Facilities, and Gasoline Dispensing Facilities Source Categories
- Proposed NESHAP for Hospital Ethylene Oxide Sterilizers Source categoryj. Final Maximum Achievable Control Technology (MACT) Standard for Portland Cement Facilities
- Final NESHAP for Polyvinyl Chloride and Copolymers Production, Primary Copper Smelting, Secondary Copper Smelting, and Primary Nonferrous Metals-- Zinc, Cadmium, and Beryllium Area Sources
- Final HON Source Category Residual Risk Rule
- Final NESHAP for Oil and Gas Production Area Source Rule
- Proposed response to court remand of Hosptial, Medical and Infectious Waste Incinerators NSPS/MACT

Id. ¶ 13.

9.    Between April 2006 and January 2007, EPA has been diligently working to

respond to the Title V petition in this case and has taken the following steps to respond to the

petition:

- Regional, OGC, OECA and OAQPS staff conducted numerous internal discussions and deliberations on the substantive issues raised by plaintiff's petitions.
- Regional staff prepared and circulated among the various Headquarters' offices, for review and comment a preliminary draft of the Order responding to the petition and in response to comments from the various headquarters offices, revised the draft order numerous times.
- Agency staff discussed issues raised by the petition with the State of South Dakota.

- Regional staff submitted a final recommended decision package to OAQPS, OGC, and OECA for management review and concurrence.
- Staff in OAQPS, OECA, OGC conducted initial briefings for their respective management on the recommended decision package.

Id. ¶ 24.

10.     EPA has carefully considered the amount of time EPA would require to complete the response to the petition.  Id. ¶ 26.  It will take 60 days to resolve the issues presented by the petition, prepare a final package for the Administrator's review and obtain final review and signature by the Administrator.  Id.

11.     A 60-day period will allow the following additional steps to be completed:

- Completion of management review.  This step involves scheduling and holding a meeting or meetings between upper management of the various offices to resolve outstanding legal and policy issues.
- Revision of the recommended order to incorporate any changes resulting from final management review.
- Schedule and conduct a briefing for the Administrator and/or his staff
- Review and signature by the Administrator.

Id.

12.     The 10 day period proposed by the plaintiffs is impractical due to the complex and important legal and policies issues raised by the petition and management level review and coordination that must be completed before the petition response can be finalized.  Id.

Respectfully submitted,

MATTHEW J. MCKEOWN
Acting Assistant Attorney General
Environment and Natural Resources Division

  s/Jessica O'Donnell
OF COUNSEL:                           JESSICA O'DONNELL  (D.C. Bar #473166)
Sheila Igoe                           Environmental Defense Section
Office of General Counsel             U.S. Department of Justice
U.S. Environmental Protection Agency  P.O. Box 23986

4

Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

Washington, D.C. 20026-3986
Telephone: (202) 305-0851
E-mail: jessica.odonnell@usdoj.gov

Street address:
601 D Street, NW, Suite 8000
Washington, D.C. 20004

Dated: January 25, 2007