IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROCKY MOUNTAIN CLEAN AIR ACTION, et al.,<br><br>Plaintiff,<br><br>v.<br><br>STEPHEN L. JOHNSON, in his official capacity as Administrator, United States Environmental Protection Agency,<br><br>Defendant. | DECLARATION IN OPPOSITION TO PLAINTIFFS' MOTION FOR JUDGMENT ON PLEADINGS AND IN SUPPORT OF EPA'S CROSS-MOTION FOR SUMMARY JUDGMENT AS TO REMEDY<br><br>Civ. No. 1:06-cv-1419 (RMC) |

## DECLARATION OF GREGORY GREEN

Gregory Green declares and states as follows:

1. I, Gregory Green, Deputy Director, Office of Air Quality Planning and Standards, Office of Air and Radiation, United States Environmental Protection Agency ("EPA" or "Agency"), make this declaration based upon personal knowledge and belief in conjunction with the filing of EPA's response to plaintiffs' motion for judgment on the pleadings, or in the alternative, for summary judgment and EPA's cross motion for summary judgment as to remedy in the above captioned case.

2. I am the Deputy Director of the Office of Air Quality Planning and Standards (OAQPS), United States Environmental Protection Agency (EPA). One of OAQPS's responsibilities is to coordinate with the EPA Regional Offices, the Office of General Counsel (OGC), and the Office of Enforcement and Compliance Assurance (OECA) in preparing final decision packages for the Administrator's review, approval and signature in response to citizen petitions filed pursuant to Title V, section 505(b)(2) of the Clean Air Act ("CAA" or "Act") and 40 CFR § 70.8(d).

3. OAQPS comprises several sub-units: the Air Quality Assessment Division, the Air Quality Policy Division, the Sector Policies and Programs Division, and the Health and Environmental Impacts Division and the Outreach and Information Division, and several other offices and staff that are considered part of the Immediate Office of the Director.

4. OAQPS is the EPA office which sets national emissions standards, monitors and reports on air quality and emissions of air pollutants, and has the primary responsibility for developing regulations that implement several important CAA programs, such as the criteria

pollutant program and the air toxics program under Title I and the permitting program under Title V.

5. The Operating Permits Group (OPG), within the Air Quality Policy Division (AQPD), is responsible for developing national regulations and guidance under the Title V operating permits program and for providing assistance on program implementation to EPA Regional Offices and State and local agencies.

6. EPA receives an average of 20 Title V petitions per year. During 2006, EPA received 15 petitions and issued orders responding to 12 petitions.

7. I am familiar with the process of preparing final decision packages for the Administrator's review, approval and signature as described in paragraph 2; and I am familiar with the case captioned above.

8. I make this affidavit to describe the process the Agency follows when responding to a citizen petition submitted under section 505(b)(2) of the CAA and 40 CFR § 70.8(d), and in support of EPA's Cross-Motion for Summary Judgment as to the appropriate remedy in this case.

9. On April 6, 2006, Jeremy Nichols, Biodiversity Conservation Alliance, Rocky Mountain Clean Air Action and various other groups and individuals petitioned the Agency to object to the proposed CAA Title V operating permit for Pope and Talbot, Inc.

10. On August 22, 2006, Rocky Mountain Clean Air Action and Jeremy Nichols filed a citizen suit pursuant to CAA section 304(a)(2), based upon EPA's failure to respond to plaintiff's petition identified in paragraph 9 above.

11. The issues raised by the petition in this case involve major legal, policy and technical issues relating to the administration and enforcement of Title V permits and the applicability of certain emissions standards to the facility at issue. The petition alleges, in part, that the February 15, 2006 Pope and Talbot, Inc. renewed and modified Title V permit fails to: (1) ensure compliance with Carbon Monoxide (CO) emissions limits,; (2) require sufficient periodic monitoring of CO emissions, (3) comply with Title V and South Dakota's State Implementation Plan (SIP) permit modification requirements; (4) require sufficient opacity monitoring; (5) require prompt reporting of deviations,; and (6) adequately support the determination that the Facility is not subject to Maximum Achievable Control Technology ("MACT") requirements for emissions of hazardous air pollutants.

12. In response to plaintiffs' complaint, EPA filed an answer on January 8, 2007.

13. Between April 2006, when the petition at issue in this case was filed, and January 2007, in addition to resources spent on the Title V petitions mentioned in paragraph 6, significant OAQPS resources have been devoted to, among other things, meeting court-ordered and consent

decree deadlines to issue the following :

    a. Proposed New Source Performance Standard (NSPS) For Spark Ignition Engines

    b. Final NSPS for Compression Ignition Engines

    c. Final Dry Cleaning Residual Risk Rule

    d. Final National Ambient Air Quality Standards (NAAQS) for Particulate Matter

    e. Control Technique Guidelines for Group II Consumer or Commercial Product Categories on the CAA Section 183(e) list

    f. Proposed NSPS for Equipment Leaks of VOC in the Synthetic Organic Chemical Manufacturing Industry

    g. Proposed NSPS for Equipment Leaks of VOC in Petroleum Refineries

    h. Proposed National Emission Standards for Hazardous Air pollutants (NESHAP) for Gasoline Distribution Bulk Terminals, Bulk Plants, Pipeline Facilities, and Gasoline Dispensing Facilities Source Categories

    i Proposed NESHAP for Hospital Ethylene Oxide Sterilizers Source category

    j. Final Maximum Achievable Control Technology (MACT) Standard for Portland Cement Facilities

    k. Final NESHAP for Polyvinyl Chloride and Copolymers Production, Primary Copper Smelting, Secondary Copper Smelting, and Primary Nonferrous Metals-- Zinc, Cadmium, and Beryllium Area Sources

    l. Final Hazardous Organic NESHAP Source Category Residual Risk Rule

    m. Final NESHAP for Oil and Gas Production Area Source Rule

    n. Proposed response to court remand of Hospital, Medical and Infectious Waste Incinerators NSPS/MACT

<u>EPA'S GENERAL PROCESS FOR RESPONDING TO PUBLIC PETITIONS FOR TITLE V PERMIT OBJECTIONS</u>

14. Section 505 (b)(1) of the CAA Clean Air Act provides that EPA shall review proposed State Title V permits and object to the issuance of any permit that EPA determines to be

not in compliance with the requirements of the Act, including requirements of a State implementation plan. The EPA has 45 days from receipt of a proposed permit to object to its issuance. In addition, section 505(b)(2) of the Act provides that any person may, within 60 days of the expiration of EPA's 45 day review period, petition the Administrator to object to the issuance of a permit if the review period has expired without an EPA objection. Section 505(b)(2) further provides that the Administrator shall grant or deny the petition within 60 days after it is filed. This provision also expressly prohibits the Administrator from delegating authority to act on these petitions. As such, all Orders responding to citizen petitions under Title V must be signed by the Administrator.

15. In acting upon petitions to object to Title V permits under section 505(b)(2) of the Act and 40 CFR § 70.8(d), the relevant Regional Office, the Office of General Counsel (OGC), the Office of Enforcement and Compliance Assurance (OECA), and the Office of Air Quality Planning and Standards (OAQPS) participate in and coordinate the development of the response.

16. The relevant Region is responsible for initially reviewing the petition and for preparing a draft Order and recommended decision package for the Administrator's signature. The Regional Office may in its discretion seek further information, including the solicitation of additional facts from petitioners, source owner or operators, or the permitting authority, to reach a recommended conclusion decision on the merits of the petition.

17. The Regional draft Order is provided to OAQPS, OGC and OECA for review, comment and concurrence.

18. After the draft Order is submitted to OAQPS, OGC, and OECA for review and comment at the staff level, the Region and Headquarters staff usually have several internal meetings to discuss the issues raised by the petition and the recommended resolution set forth in the draft Order.

19. Following this comment period, the Regional Office revises the draft Order taking into account any comments provided by OAQPS, OGC and OECA staff. In the event that significant legal or policy issues questions arise at the staff level, such questions may be elevated to management level for additional coordination and resolution.

20. Following resolution of all comments, the Regional Office submits the final recommended decision package to OAQPS, OGC, and OECA for management review and concurrence. These offices then conduct a management level review of the final recommended decision package.

21. Following review and concurrence by OAQPS, OGC, and OECA management, a final recommended decision package is prepared for the Administrator's consideration and signature.

22. At the request of the Administrator's Office, the Region, OAQPS, OGC, and OECA will brief the Administrator or the Administrator's staff on the final recommended decision package.

23. Lastly, the Region prepares a Notice of the Administrator's decision on a petition for publication in the <u>Federal Register</u>, and transmits the Order for posting on the EPA web site.

<u>EPA'S PROCESS FOR RESPONDING TO THE PETITION AT ISSUE</u>

24. Between April 2006 and January 2007, the Agency has been diligently working to respond to the Title V petition in this case and has taken the following steps to respond to the petition:

>    a. Regional, OGC, OECA and OAQPS staff conducted numerous internal discussions and deliberations on the substantive issues raised by plaintiffs' petitions.
>
>    b. Regional staff prepared and circulated among the various Headquarters' offices, for review and comment a preliminary draft of the Order responding to the petition and in response to comments from the various headquarters offices, revised the draft order numerous times.
>
>    c. Agency staff discussed issues raised by the petition with the State of South Dakota.
>
>    d. Regional staff submitted a final recommended decision package to OAQPS, OGC, and OECA for management review and concurrence.
>
>    e. Staff in OAQPS, OECA, OGC conducted initial briefings for their respective management on the recommended decision package.

26. I have carefully considered the amount of time EPA would require to complete the response to the petition. The 10 day period proposed by the plaintiffs is impractical due to the complex and important legal and policies issues raised by the petition and management level review and coordination that must be completed before the petition response can be finalized. I estimate that it will take sixty (60) days to resolve the issues presented by the petition, prepare a final decision package for the Administrator's review and obtain final review and signature by the Administrator. A 60-day period will allow time for the following additional steps to be completed:

>    a. Completion of management review. This step involves scheduling and holding a meeting or meetings between upper management of the various offices to resolve outstanding legal and policy issues.

    b. Revision of the recommended order to incorporate any changes resulting from final management review.

    c. Schedule and conduct a briefing for the Administrator and/or his staff.

    d. Review and signature by the Administrator.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 24 day of January, 2007.

_____
Gregory Green