UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ROCKY MOUNTAIN CLEAN AIR ACTION, et al.,<br><br>　　Plaintiff,<br><br>　　v.<br><br>STEPHEN L. JOHNSON, in his official capacity as Administrator, United States Environmental Protection Agency,<br><br>　　Defendant. | Civ. No. 1:06-cv-1419 (RMC) |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION
FOR JUDGMENT ON THE PLEADINGS FOR SECOND CLAIM
AND CROSS-MOTION FOR SUMMARY JUDGMENT AS TO REMEDY**

Defendant Stephen L. Johnson, in his official capacity as Administrator, United States Environmental Protection Agency ("EPA"), respectfully submits this response to Plaintiffs' Motion for Judgment on the Pleadings for their Second Claim.

## INTRODUCTION

Plaintiffs Rocky Mountain Clean Air Action and Jeremy Nichols ("Plaintiffs") brought this action to compel EPA to act on two citizen petitions pursuant to 42 U.S.C. § 7661d, a provision of the Clean Air Act ("CAA" or "Act"). Plaintiffs' motion for judgment addresses only the petition that is the subject of Plaintiffs' Second Claim for Relief, relating to the CAA Title V operating permit for the Pope and Talbot, Inc. lumber mill.[1] EPA does not dispute that it

---

[1] On December 22, 2006, Defendant signed the Order responding to the petition that is the subject of the First Claim for Relief set forth in Plaintiffs' Amended Complaint, relating to the CAA Title V operating permit for the Denver Regional Landfill (South). Plaintiffs have stated their intention to dismiss this claim, except as to costs and attorney fees. See Motion for

has not yet completed its response to the citizen petition relating to the CAA Title V operating permit for Pope and Talbot.  Therefore, EPA does not contest liability.

However, the relief requested by Plaintiffs is impracticable and inappropriate.  Plaintiffs seek an order requiring EPA to grant or deny the Pope and Talbot petition within ten working days of the date of the Court's order on the pending motion.  See Pl. Mot. J. at 5.  Plaintiffs' proposed time frame of ten working days is insufficient for EPA to complete its response to the petition in a manner that best serves the public interest.  The petition raises complex and important legal and policy issues and a response requires extensive management level review and coordination.  See Declaration of Gregory Green, January 24, 2007 ("Green Decl."), at ¶ 26.  For the reasons described in the Green Declaration, EPA estimates that it requires 60 days to complete its response to the Pope and Talbot petition.  Id.

Accordingly, the Court should deny the relief requested in Plaintiffs' motion and instead order the remedy proposed by EPA.

## BACKGROUND

### I.      STATUTORY AND REGULATORY BACKGROUND

The Clean Air Act , 42 U.S.C. §§ 7401-7671q, enacted in 1970 and extensively amended in 1977 and 1990, is intended to "protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare."  42 U.S.C. § 7401(b)(1).  Title V of the Act was added in 1990, 42 U.S.C. §§ 7661-7661f, and requires all major stationary sources of air pollution to obtain operating permits that include enforceable emission limitations and such other conditions necessary to assure compliance with the Act.  42 U.S.C. §§ 7661a(a), 7661c(a).

---

Judgment ("Mot. J.") at 2 n.2.

The CAA is based in part on the Congressional finding that "air pollution prevention . . . and air pollution control at its source is the primary responsibility of States and local governments." 42 U.S.C. § 7401(a)(3). Title V therefore required each state to develop and implement its own air permitting program which meets, at minimum, the requirements established in the CAA and EPA's implementing regulations. 42 U.S.C. § 7661a(d). As each state's program was approved by EPA, that state was authorized to issue Title V operating permits and the agency specified in that program became the "permitting authority" for major sources of air pollution within its area, with the exception of sources located in Indian country. 42 U.S.C. § 7661(4); 40 C.F.R. §§ 70.2 (permitting authority), 70.8, 71.2 (permitting authority); 71.4(b) (EPA implementation in Indian country). The State of South Dakota has an EPA-approved Title V permit program that is administered by the South Dakota Department of Environment and Natural Resources. 61 Fed. Reg. 2720 (Jan. 29, 1996); see also 40 C.F.R. Part 70, App. A.

State permitting authorities develop and submit each proposed Title V permit to the EPA Administrator for a 45-day review. 42 U.S.C. § 7661d(a). During that time, the Administrator may object to provisions (if any) that do not comply with applicable CAA requirements. If the Administrator does not object during the pre-issuance review period, any person may administratively petition the Administrator within the 60 day-period following closure of EPA's review period requesting that he do so. 42 U.S.C. § 7661d(b)(1), (2); 40 C.F.R. § 70.8(c), (d). Any petition shall be based only on objections to the permit that were raised with reasonable specificity during the public comment period provided by the state permitting authority. 42 U.S.C. § 7661d(b)(2); 40 C.F.R. § 70.8(d). The CAA further provides that the Administrator "shall grant or deny such petition within 60 days after the petition is filed." 42 U.S.C.

§ 7661d(b)(2); 40 C.F.R. § 70.8(d).  This provision also expressly prohibits the Administrator from delegating the authority to act on these petitions.  42 U.S.C. § 7661d(b)(2).  Therefore, all orders responding to petitions under Title V must be signed by the Administrator himself.

## II.    FACTUAL BACKGROUND

The pending motions involve Plaintiffs' citizen petition for EPA to object to the proposed CAA Title V permit for the Pope and Talbot lumber mill.  EPA does not dispute that it did not respond to Plaintiffs' petitions within the time provided by the CAA, 42 U.S.C. § 7661d(b)(2).  Def. Statement of Facts ¶ 2.  However, Plaintiffs' proposed ten-day time frame for EPA to complete its response to the petition is not "appropriate" or in the public interest.  See Pl. Mot. J. at 5; Green Decl. ¶ 26; Def. Statement of Facts ¶ 12.

Plaintiffs' petition raises a multiplicity of major legal, policy and technical issues relating to the administration and enforcement of Title V permits and the applicability of certain emissions standards to the facility at issue.  Green Decl. ¶ 11; Def. Statement of Facts ¶ 4.  The petition alleges, in part, that the February 15, 2006 Pope and Talbot, Inc. renewed and modified Title V permit fails to: (1) ensure compliance with Carbon Monoxide (CO) emissions limits; (2) require sufficient periodic monitoring of CO emissions; (3) comply with Title V and South Dakota's State Implementation Plan (SIP) permit modification requirements; (4) require sufficient opacity monitoring; (5) require prompt reporting of deviations; and (6) adequately support the determination that the facility is not subject to Maximum Achievable Control Technology ("MACT") requirements for emissions of hazardous air pollutants.  Id.

As described in the accompanying declaration of Gregory Green, Deputy Director of EPA's Office of Air Quality Planning and Standards ("OAQPS"), between April 2006, when Plaintiffs' petition was filed, and the present, EPA has been diligently working to respond to the

petition. See Green Decl. at ¶ 24; Def. Statement of Facts ¶ 9. Specifically, EPA has undertaken the following tasks: staff at EPA Region 8 and various EPA Headquarters' offices have conducted numerous internal discussions and deliberations on the substantive issues raised by Plaintiffs' petition; Regional staff prepared, and circulated among the various Headquarters' offices for review and comment, a preliminary draft of the Order responding to the petition; Regional staff revised the draft order numerous times in response to comments from the various Headquarters offices; staff discussed issues raised by the petition with the State of South Dakota; Regional staff submitted a final recommended decision package to various offices within EPA headquarters for management review and concurrence; and staff in various Headquarters' offices conducted initial briefings for their respective management on the recommended decision package. Green Decl. ¶ 24; Def. Statement of Facts ¶ 9.

In response to Plaintiffs' motion, EPA has carefully considered the amount of time EPA requires to complete the response to the petition. Green Decl. at ¶ 26; Def. Statement of Facts ¶ 10. The ten-day time period proposed by Plaintiffs is impracticable due to the complex and important legal and policy issues raised by the petition and management level review and coordination that must be completed before the petition response can be finalized. Green Decl. ¶ 26; Def. Statement of Facts ¶ 12. In light of the remaining coordination and effort required, EPA believes that 60 days is a reasonable period of time. See Green Decl. ¶ 26; Def. Statement of Facts ¶ 10-11. Specifically, before the petition response may be finalized, the following activities must be accomplished: complete management review, including meetings between upper management to resolve significant legal and policy issues; revise the order to reflect resolution of issues during management review; schedule and conduct a briefing for the

5

Administrator or his staff; and review and signature by the Administrator.  See Green Decl. ¶ 26; Def. Statement of Facts ¶ 11.

## STANDARD OF REVIEW

Plaintiffs filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), or in the alternative, a motion for summary judgment pursuant to Rule 56(c).  See Pl. Mot. J., at 1 n.1.  Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, . . . together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 n.4 (1986) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)).

## ARGUMENT

### THE ADMINISTRATOR SHOULD BE PERMITTED SIXTY DAYS TO GRANT OR DENY THE PETITIONS

EPA does not dispute that it has not yet responded to Plaintiffs' Pope and Talbot petition, as required by the CAA, 42 U.S.C. § 7661d(b)(2).  See Answer at ¶47; Defs. Statement of Facts ¶ 2.  Pursuant to the CAA citizen suit provision, the appropriate remedy is an order requiring EPA to respond to the petition.  42 U.S.C. § 7604.  However, the schedule for EPA to act should be reasonable and ensure that the Agency has sufficient time to consider the technical, legal, and policy issues at stake and render a sound decision that would withstand judicial review.  The ten-day schedule proposed by Plaintiffs is insufficient.  Therefore, the Court should deny Plaintiffs' request for relief, and grant the relief proposed by EPA.

A district court has broad discretion to fashion equitable remedies.  Weinberger v. Romero-Barcelo, 456 U.S. 305, 311-13 (1982); American Lung Ass'n v. Browner, 884 F. Supp.

345, 347 (D. Ariz. 1994). In setting a schedule for an agency to act, the goal is not to punish an agency for missing a deadline but to protect the public interest, including the public interest in allowing an agency the time necessary to produce sound and defensible decisions. See, e.g., Natural Res. Def. Council ("NRDC") v. Train, 510 F.2d 692, 713 (D.C. Cir. 1975) (adequate time for "meaningful consideration [of] the technical intricacies" in a complex rulemaking "may well speed achievement of the goal of pollution abatement by obviating the need for time-consuming corrective measures at a later date"); Sierra Club v. Thomas, 658 F. Supp. 165, 175 (N.D. Cal. 1987) ("since the purpose of this order is to protect the public interest and not to punish EPA, the court would extend EPA's time . . . if it were convinced that doing so was necessary for the promulgation of workable regulations"). Even where an agency has missed a statutory deadline, a court should not require it "to do an impossibility," but should apply a "rule of reason" based on the relevant facts and circumstances. In re Barr Labs., Inc., 930 F.2d 72, 75 (D.C. Cir. 1991); NRDC v. Train, 510 F.2d at 713. In NRDC v. Train, the leading case on the subject of an agency's failure to meet statutory deadlines, the D.C. Circuit recognized two types of circumstances relevant to the feasibility of a particular deadline: (1) budgetary and manpower constraints, and (2) the need for an agency to have more time to sufficiently evaluate complex technical issues. See NRDC v. Train, 510 F.2d at 712-13.

      Plaintiffs' petition raises "major legal, policy and technical issues relating to the administration and enforcement of Title V permits and the applicability of certain emissions standards" to the Pope & Talbot facility. Green Decl. ¶ 10; Def. Statement of Facts ¶ 4. The relief proposed by EPA represents the reasonable minimum time in which EPA can complete a response to the Pope and Talbot petition in light of the additional work that needs to be accomplished with regard to the petition and the Agency's other obligations. Although EPA has

been working diligently to respond to the petition, see Green Decl. at ¶ 24; Def. Statement of Facts ¶ 9, additional intra-agency review and coordination is necessary to resolve the complex issues raised by the petition, see Green Decl. at ¶ 26; Def. Statement of Facts ¶ 10-11.  EPA estimates that it will require 60 days to complete management review, including meetings between upper management to resolve significant legal and policy issues; revise the order to reflect resolution of issues during management review; schedule and conduct a briefing for the Administrator or his staff; and review and signature by the Administrator.  Green Decl. ¶ 26; Def. Statement of Facts ¶ 10-11.

In evaluating the reasonableness of EPA's schedule, the Court also must consider the Agency's competing mandatory obligations.  OAQPS – the office with responsibility for coordinating with other relevant EPA offices in developing draft responses to Title V petitions – receives and responds to numerous Title V permit petitions on an ongoing basis.  See Green Decl. ¶ 6; Def. Statement of Facts ¶ 7.  In addition to addressing these petitions, between April 2006, when EPA received Plaintiffs' petition and January 2007, OAQPS has devoted significant resources to, among other things, meeting court-ordered deadlines to issue the following:

- Proposed New Source Performance Standard (NSPS) For Spark Ignition Engines
- Final NSPS for Compression Engines
- Final Dry Cleaning Residual Risk Rule
- Final National Ambient Air Quality Standards (NAAQS) for Particulate Matter
- Control Technique Guidelines for Group II Consumer or Commercial Product Categories on the CAA Section 183(e) list.
- Proposed NSPS for Equipment Leaks of VOC in the Synthetic Organic Chemical Manufacturing Industry
- Proposed NSPS for Equipment Leaks of VOC in Petroleum Refineries
- Proposed National Emission Standards for Hazardous Air pollutants (NESHAP) for Gasoline Distribution Bulk Terminals,  Bulk Plants, Pipeline Facilities, and Gasoline Dispensing Facilities Source Categories
- Proposed NESHAP for Hospital Ethylene Oxide Sterilizers Source categoryj. Final Maximum Achievable Control Technology (MACT) Standard for Portland Cement Facilities

- Final NESHAP for Polyvinyl Chloride and Copolymers Production, Primary Copper Smelting, Secondary Copper Smelting, and Primary Nonferrous Metals-- Zinc, Cadmium, and Beryllium Area Sources
- Final HON Source Category Residual Risk Rule
- Final NESHAP for Oil and Gas Production Area Source Rule
- Proposed response to court remand of Hosptial, Medical and Infectious Waste Incinerators NSPS/MACT

Green Decl. ¶ 13; Def. Statement of Facts ¶ 8.

Although Plaintiffs assert that ten days is "appropriate," they provide no rationale for this time frame other than to argue that the Court should impose an "expeditious schedule." See Pl. Mot. J. at 5. However, the Court should consider more than expediency in determining how to fashion an appropriate remedy. "The public has a significant interest in ensuring that the government does not promulgate rules via a process that emphasizes expediency over quality and accuracy." Cronin v. Browner, 90 F. Supp. 2d 364, 373 (S.D.N.Y. 2000). Contrary to Plaintiffs' expediency-driven approach, the court should examine the relevant facts and circumstances and evaluate the time frame needed by the agency to make well-reasoned, scientifically supportable, and defensible decisions. The detailed reasons EPA provides in support of its 60-day proposal highlight why Plaintiffs' ten-day time frame is both impracticable and unreasonable.

Notably, the time requested by EPA – sixty days – is the time provided for EPA to act under the statute. 42 U.S.C. § 7661d(b)(2). Courts routinely rely on the statute for the appropriate time frame for an order requiring an agency to act – particularly when the time frame is measured in days, as opposed to years. See e.g., State of New York v. Gorsuch, 554 F. Supp. 1060 (S.D.N.Y. 1983) (where EPA missed 180-day deadline for issuing regulations, agency ordered to publish regulations within 180 days); State of New York v. Ruckelshaus, No. 84-0853, 1984 WL 13953 (D.D.C. Oct. 5, 1984) (where 60-day deadline for acting on petitions

9


passed, agency required to issue decision within 60 days of court order); <u>Sierra Club v. Gorsuch</u>, 551 F. Supp. 785 (N.D. Cal. 1982).  Indeed, it is not unusual for a court to provide government agencies time in excess of that established by statute, when circumstances warrant it.  <u>See</u> <u>e.g.</u>, <u>Envtl. Def. Fund v. Thomas</u>, 627 F. Supp. 566, 569-70 (D.D.C. 1986) (allowing EPA five months from date of court order to issue regulations, even though statutory time frame was less than four months).  In this case, for the reasons discussed above, 60 days is warranted.  Accordingly, the Court should deny the Plaintiffs' request for relief and grant EPA's proposed remedy.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for judgment on the pleadings as to remedy, grant EPA's motion for summary judgment as to remedy, and enter EPA's proposed order allowing EPA 60 days to respond to Plaintiffs' petition relating to the Pope & Talbot facility.

        Respectfully submitted,

        MATTHEW J. MCKEOWN
        Acting Assistant Attorney General
        Environment and Natural Resources Division

           s/*Jessica O'Donnell*

| | |
|---|---|
| OF COUNSEL: | JESSICA O'DONNELL  (D.C. Bar #473166) |
| Sheila Igoe | Environmental Defense Section |
| Office of General Counsel | U.S. Department of Justice |
| U.S. Environmental Protection Agency | P.O. Box 23986 |
| Ariel Rios Building | Washington, D.C. 20026-3986 |
| 1200 Pennsylvania Avenue, N.W. | Telephone: (202) 305-0851 |
| Washington, D.C. 20460 | E-mail: jessica.odonnell@usdoj.gov |
| | |
| | Street address: |
| | 601 D Street, NW, Suite 8000 |
| | Washington, D.C. 20004 |

Dated: January 25, 2007