IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROCKY MOUNTAIN CLEAN AIR ACTION and JEREMY NICHOLS,<br><br>Plaintiffs,<br><br>v.<br><br>STEPHEN L. JOHNSON,<br><br>Defendant. | Civil No. 1:06-cv-01419-RMC |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS FOR SECOND CLAIM AND MEMORANDUM IN OPPOSITION TO DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT AS TO REMEDY[1]**

## I.   INTRODUCTION

Defendant Stephen L. Johnson [hereinafter "EPA"] concedes liability in this Clean Air Act deadline suit regarding EPA's failure to perform its mandatory duty to respond to Rocky Mountain Clean Air Action and Jeremy Nichols' Petition seeking an Objection to a Clean Air Act operating permit for the to Pope and Talbot, Inc. lumber mill ("Pope and Talbot") in Spearfish, South Dakota [hereinafter "Plaintiffs' Petition"] within 60 days.  See Defendant's Memorandum in Opposition to Plaintiffs' Motion for Judgment on the Pleadings for Second Claim and Cross-Motion for Summary Judgment as to Remedy ("EPA Opposition") at 2. Specifically, all parties agree that EPA was required to respond to Plaintiffs' Petition within 60 days, that is by June 9, 2006, and has failed to satisfy that mandatory duty.  Id.  Therefore, the only issue in dispute is the specific schedule the Court should set to address EPA's violation of

its mandatory duty. As to the schedule, Plaintiffs are willing to accept the position articulated by EPA's own declarant.

EPA's proposed relief is a schedule of 60 days from the date of this Court's order. Thus, it appears that EPA has chosen the maximum amount of time it could reasonably argue for, considering that the statute requires a response within 60 days from the date Plaintiffs' submitted their Petition to the Administrator. 40 U.S.C. § 7661d(b)(2). The 60 day deadline is a strict duty on EPA to respond to Title V Petitions for Objections. That is, the Clean Air Act does not provide EPA an opt-out or extension.

EPA's litigation position is inconsistent with its own Declarant's statements. In its Opposition Memorandum, EPA asks the Court to enter its proposed order, which provides EPA 60 days from the date of the Court's order to respond to Plaintiffs' Petition. Defendant's Proposed Order [Doc. 13-4]. However, according to the Declaration of Gregory Green, the agency needs only an additional 60 days from the time of filing the Declaration to complete the tasks necessary to respond to Plaintiffs' Petition. The only conclusion one can draw from EPA's inconsistency is that the agency is inappropriately using this litigation as a delay tactic. EPA has not provided any evidence or argument why 60 days from the date of this Court's Order is actually required or appropriate.

EPA's claim that it needs 60 days from the date of this Court's Order because it has been busy responding to other Title V Petitions and other court orders is less than the "whole truth." EPA suffers from a backlog of Title V Petition responses while at the same time EPA has actually spent considerable resources taking actions that are not mandatory under the Clean Air

---

[1] Defendant styles its response to Plaintiffs' Motion for Judgment on the Pleadings as a "Cross Motion for Summary Judgment," but Defendant admits liability and therefore Plaintiffs are entitled to judgment in their favor. Defendant's "Cross Motion" is simply argument as to the appropriate equitable remedy.

Act or required by a court order but which do <u>decrease</u> environmental and public health protection. Therefore, Plaintiffs motion should be granted in its entirety.

## II.     STANDARD OF REVIEW

Defendant styled its Response to Plaintiffs' Motion for Judgment on the Pleadings as a response and a cross motion for summary judgment as to remedy pursuant to Fed. R. Civ. P. 56(c).  <u>See</u> EPA Opposition at 1.  Because EPA does not contest the issue of liability, though, the entry of judgment on the pleadings for Plaintiffs is appropriate, and it remains only for the Court to fashion an appropriate equitable remedy.  <u>Amer. Lung Ass'n v. Browner</u>, 884 F. Supp. 345, 349 (D. Ariz. 1994) (where liability is uncontested and "it remains only for the Court, acting in its discretion, to fashion an equitable remedy," summary judgment is appropriate).

## III.     ARUGMENT

A.     PLAINTIFFS' PROPOSED REMEDY IS REASONABLE.

EPA argues that Plaintiffs' proposed remedy is impracticable and inappropriate.  EPA incorrectly implies that Plaintiffs propose that EPA issue a decision on Plaintiffs' Petition within 10 days of their Motion.  Rather, Plaintiffs' position is that, considering the significant amount of time that has already passed since EPA's mandatory duty was due, and considering the time necessary for the Court to render its decision on this motion, a decision from EPA within 10 days of the Court's order is reasonable.  Notwithstanding that Plaintiffs' initial position provides sufficient time for EPA to come to a decision regarding Plaintiffs' Petition, Plaintiffs' are willing to accept a 60 day schedule from the date the Declaration of Gregory Green was signed, January 24, 2007, or within 5 working days if the Court's order is issued after 60 days from January 24,

2007.[2]  Plaintiffs' current position on the schedule is consistent with Mr. Green's estimate "that it will take sixty (60) days to resolve the issues presented by the petition, prepare a final decision package for the Administrator's review, and obtain final review and signature by the Administrator."  Green Declaration ¶ 26.  Given that no genuine controversy exists between the agency's estimation of its scheduling needs and Plaintiffs' demand, the Court should order EPA to grant or deny Plaintiffs' Petition by March 26, 2007, or if the Court issues its order after March 26, 2007, within 5 working days of the Court's Order.

> B. EPA HAS NOT MET ITS BURDEN TO SHOW THAT IT SHOULD BE EXCUSED FROM THE CONGRESSIONAL MANDATE TO GRANT OR DENY A TITLE V PETITION WITHIN 60 DAYS.

The Court should scrutinize carefully EPA's claim that despite its diligent work on Plaintiffs' Petition since April, 2006, compliance with Plaintiffs' proposed schedule is impossible.  NRDC v. Train, 510 F.2d 692, 705 (D.C. Cir. 1975).  (courts must scrutinize agency claims of impossibility to "separate justifications grounded in the purposes of the Act from the footdragging efforts of a delinquent agency").  EPA bears a heavy burden to show that compliance with the Clean Air Act is impossible or infeasible.  See Am. Lung Ass'n v. Browner, 884 F. Supp. 345, 347 (D. Ariz. 1994) (citing Sierra Club v. Ruckelshaus, 602 F. Supp. 892, 899 (N.D. Cal. 1984)).  As the D.C. Circuit explained over thirty years ago, "[a]n equity court can never exclude claims of inability to render absolute performance, but it must scrutinize such claims carefully since officials may seize on a remedy made available for extreme illness and promote it into the daily bread of convenience."  NRDC v. Train, 510 F.2d at 713.  Here, EPA's proposed relief – a deadline 60 days after this Court's Order – would "completely neutralize the

---

[2] Plaintiffs have attached a Revised Proposed Order reflecting this change.

4

mandatory nature of the statutory directive." Sierra Club v. Browner, 130 F. Supp. 2d 78, 95 (D.D.C. 2001).

EPA claims that it has been diligently working on Plaintiffs' Petition, but the agency fails to demonstrate the required "utmost diligence." See New York v. Gorsuch, 554 F. Supp. 1060, 1065 n.4 (S.D.N.Y. 1983) ("If the administrator could possibly have complied with the statutory mandate, but did not because of competing concerns or other decisions on his part, then he is not acting in 'good faith'"). As grounds for the exceptionally lenient schedule it proposes, EPA claims (1) Plaintiffs' Petition raises complex issues; (2) extensive management review and coordination is required; and (3) EPA is busy with other things. See EPA's Opposition at 2, 6 & 8. These reasons do not demonstrate the "utmost diligence."

The fact is that EPA consistently delays responding to Title V Petitions for Objections. According to the Title V Task Force report to the Clean Air Act Advisory Committee, EPA has failed to respond at all to many petitions, and has consistently responded after the 60 day mandatory deadline.

> The data on the [EPA Title V Petition] website as of December 1, 2005, indicated the following. The EPA petition database currently reveals that in 2005, 7 petitions were filed, but none have been decided. In 2004, 21 petitions were filed: 13 have final decisions, and 8 are still pending. In 2003, 30 petitions were filed, one regarding Illinois' Title V program which is still pending, 13 of which were "dismissed", 10 others which are still pending, and 6 which have been decided. In 2002, 29 petitions were filed, one regarding Wisconsin's Title V program, of which 20 have been decided. In 2001, 27 petitions were filed, and all but 4 have been decided. In 2000 there were 54 petitions filed. Two of these were withdrawn. A number of the petitions addressed the same facility but were filed by different parties, and 6 are still pending. From 1996 to 1999, there were 20 petitions filed. Three others are also still pending and one was withdrawn.

5

Title V Task Force, <u>Final Report to the Clean Air Act Advisory Committee Title V Implementation Experience April 2006</u>, available at < http://earth1.epa.gov/oar/oaqps/permits/taskforcedocs/200604_report.pdf> (last visited 1/26/07).

It is apparent that these delays are not caused by the amount of work facing EPA as EPA clearly does not use a first in, first out system in responding to Title V petitions.  EPA's webpage reveals that is has three petitions that were filed in 1998 which are still pending. http://www.epa.gov/region7/programs/artd/air/title5/petitiondb/petitiondb1999.htm (last visited 2/12/07).  However, EPA has already responded to five petitions which were filed in 2006. http://www.epa.gov/region7/programs/artd/air/title5/petitiondb/petitiondb2006.htm (last visited 2/12/07).  It seems that a court deadline or the impending threat of a court deadline is the only thing that gets EPA to respond to a Title V petition.

EPA's failure to adhere to the Clean Air Act's mandatory Title V petition review deadline is not solely the product of a federal agency attempting to juggle multiple statutory requirements under the constraints of a limited budgetary allocation.  Rather, EPA's recent regulatory actions reflect the agency's decision to prioritize the fulfillment of policy objectives at the expense of allocating agency resources to comply with Congressional mandates.  Too often, EPA's agenda has given precedence to discretionary actions that weaken environmental standards over statutorily compelled actions like the petition response at issue.

For example, the EPA has devoted its resources to redesignating areas from nonattainment of the National Ambient Air Quality Standards to attainment.  <u>See</u> <u>e.g.</u> 71 Fed. Reg. 27,631 (May 12, 2006)(response required by July, 2007, but completed over a year earlier than required by statute), 72 Fed. Reg. 1,956 (Jan. 17, 2007)(response required by May, 2008 but completed over a year earlier).  EPA has also spent considerable resources extending the Early

6

Action Compacts that allow areas across the county to avoid nonattainment designation for the 8-hour ozone standard. See 71 Fed. Reg. 69,022 (November 29, 2006). Moreover, EPA has expended resources drafting regulatory revisions designed to roll back environmental regulations on air pollution sources. See 71 Fed. Reg. 54,235 (Sept. 14, 2006) (proposing revisions to the emission tests used to determine whether modifications made to existing facilities trigger Clean Air Act prevention of significant deterioration and new source review requirements for that facility). Further, the agency has recently undertaken a number of other regulatory actions not compelled by statutory deadline or court order which are at best questionable from the standpoint of advancing environmental protection. See e.g. New York v. EPA, No. 03-1380, 2006 U.S. App. LEXIS 6598 (D.C. Cir. Mar. 17, 2006) (rejecting another recent EPA attempt to weaken prevention of significant deterioration and new source review rules); 70 Fed. Reg. 43,922 (July 29, 2005) (proposing to exempt emissions sources from previously applicable hazardous pollutant limitations during facility startups, shutdowns, and malfunctions); 70 Fed. Reg. 51,591 (Aug. 31, 2005) (staying the effectiveness of the $NO_x$ State Implementation Plan ("SIP") Call as it pertains to the State of Georgia); 70 Fed. Reg. 54,046 (Sept. 13, 2005) (announcing interim guidance advising states how to weigh photochemical reactivity of Volatile Organic Compounds in crafting SIPs that meet the ozone NAAQS); 70 Fed. Reg. 71,446 (Nov. 29, 2005) (proposing to remove the "nuisance" provisions of Georgia law from the Georgia Clean Air Act State Implementation Plan). The Court should therefore "take with a grain of salt" any allegations by Defendant that compliance with its mandatory duties is impossible because the agency is too busy with other mandatory duties.

### III. CONCLUSION

Therefore, for the reasons explained above Plaintiffs respectfully request that the Court deny EPA's Motion for Summary Judgment as to Remedy, grant Plaintiffs' Motion for Judgment on the Pleadings and order EPA to grant or deny Plaintiffs' Petition for Objection to Pope and Talbot's Title V Permit by March 26, 2007, or if the Court issues its Order after March 26, 2007, within 5 working days of the Court's Order.

Respectfully submitted,

____/s_____
Robert Ukeiley (MD14062)
Law Office of Robert Ukeiley
435R Chestnut Street, Suite 1
Berea, KY 40403
Tel: (859) 986-5402
Fax: (866) 618-1017
E-mail: rukeiley@igc.org

Counsel for Plaintiffs

DATED: February 12, 2007