IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROCKY MOUNTAIN CLEAN AIR ACTION and JEREMY NICHOLS,<br><br>  Plaintiffs,<br><br>  v.<br><br>STEPHEN L. JOHNSON,<br><br>  Defendant. | Civil No. 1:06-cv-01419-RMC |

**PLAINTIFFS' RESPONSE TO DEFENDANT STEPHEN L. JOHNSON'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

Plaintiffs respond to Defendant Stephen L. Johnson's Statement of Material Facts Not in Dispute in Support of Cross-Motion for Summary Judgment as to Remedy as follows:

<u>Defendant's Fact 1:</u>

On April 6, 2006, Plaintiffs Jeremy Nichols, Rocky Mountain Clean Air Action, and others petitioned the EPA to object to the proposed Clean Air Act ("CAA") Title V operating permit for Pope and Talbot, Inc. lumber mill. Declaration of Gregory Green, Jan. 24, 2007 ("Green Decl."), at ¶ 9.

**<u>Plaintiffs' Response to Fact 1:</u>**

The facts stated in paragraph 1 are material and not disputed.

<u>Defendant's Fact 2:</u>

EPA has not yet responded to Plaintiffs' petition regarding the Pope and Talbot Title V operating permit, as required by CAA section 505(b)(2), 42 U.S.C. § 7661d(b)(2). Defendant's Answer to First Amended Complaint ("EPA Ans."), at ¶ 47.

**Plaintiffs' Response to Fact 2:**

The facts stated in paragraph 2 are material and not disputed.

Defendant's Fact 3:

On August 22, 2006, Plaintiffs Rocky Mountain Clean Air Action and Jeremy Nichols filed a citizen suit pursuant to CAA section 304(a)(2), based upon EPA's failure to respond to Plaintiff's petition identified in paragraph 9 above. See First Amended Complaint.

**Plaintiffs' Response to Fact 3:**

The facts stated in paragraph 3 are material and not disputed.

Defendant's Fact 4:

The issues raised by the petition in this case involve major legal, policy and technical issues relating to the administration and enforcement of Title V permits and the applicability of certain emissions standards to the facility at issue. Green Decl. ¶ 11. The petition alleges, in part, that the February 15, 2006 Pope and Talbot, Inc. renewed and modified Title V permit fails to: (1) ensure compliance with Carbon Monoxide (CO) emissions limits; (2) require sufficient periodic monitoring of CO emissions; (3) comply with Title V and South Dakota's State Implementation Plan (SIP) permit modification requirements; (4) require sufficient opacity monitoring; (5) require prompt reporting of deviations; and (6) adequately support the determination that the facility is not subject to Maximum Achievable Control Technology ("MACT") requirements for emissions of hazardous air pollutants. Id.

**Plaintiffs' Response to Fact 4:**

The facts stated in paragraph 4 are material and not disputed.

Defendant's Fact 5:

In acting upon petitions to object to Title V permits, the relevant Regional Office, the Office of General Counsel (OGC), the Office of Enforcement and Compliance Assurance (OECA), and the Office of Air Quality Planning and Standards (OAQPS) participate in and coordinate the development of the response. Id. ¶ 15.

**Plaintiffs' Response to Fact 5:**

Plaintiffs do not dispute the facts in paragraph 5 but do dispute that they are material. The requirements for response to a Title V petition for objection are contained in 42 U.S.C. § 7661d. The statute requires that EPA grant or deny a Title V petition for objection within 60 days, and object to a Title V permit within 60 days if the "petitioner demonstrates to the Administrator that the permit is not in compliance with the requirements of this chapter, including the requirements of the applicable implementation plan." 42 U.S.C. 7661d(b)(2). Nothing in the Clean Air Act requires that EPA complete its work in the manner identified in Defendant's Fact 5. Rather, EPA may choose to organize its work as described in Defendant's Fact 5.

Defendant's Fact 6:

The relevant Region is responsible for initially reviewing the petition and for preparing a recommended decision package for the Administrator's signature. The Regional Office may in its discretion seek further information, including the solicitation of additional facts from petitioners, source owner or operators, or the permitting authority, to reach a recommended conclusion on the merits of the petition. Id. ¶ 16.

**Plaintiffs' Response Fact 6:**

Plaintiffs do not dispute the facts in paragraph 6 but do dispute that they are material. The requirements for response to a Title V petition for objection are contained in 42 U.S.C. § 7661d. The statute requires that EPA grant or deny a Title V petition for objection within 60 days, and object to a Title V permit within 60 days if the "petitioner demonstrates to the Administrator that the permit is not in compliance with the requirements of this chapter, including the requirements of the applicable implementation plan." 42 U.S.C. 7661d(b)(2). Nothing in the Clean Air Act requires that EPA complete its work in the manner identified in Defendant's Fact 6. Rather, EPA may choose to organize its work as described in Defendant's Fact 6.

Defendant's Fact 7:

EPA receives an average of 20 Title V petitions per year. During 2006, EPA received 15 petitions and issued orders responding to 12 petitions. Id. ¶ 6.

**Plaintiffs' Response to Fact 7:**

The facts stated in paragraph 7 are material. Plaintiffs dispute that EPA issued orders responding to twelve of the fifteen petitions received by EPA in 2006. The Title V Petition Database maintained by EPA Region 7 indicates that fifteen petitions were received by EPA in 2006. Of those one has been withdrawn, nine are still pending, and final responses to five have been issued by EPA. See http://www.epa.gov/region7/programs/artd/air/title5/petitiondb/petitiondb.htm. The remaining facts stated in paragraph 7 are not disputed.

Defendant's Fact 8:

Between April 2006, when the petition at issue in this case was filed, and January 2007, in addition to resources spent on the Title V petitions mentioned in paragraph 5, significant OAQPS resources have been devoted to, among other things, meeting court-ordered and consent decree deadlines to issue the following:

4

- Proposed New Source Performance Standard (NSPS) For Spark Ignition Engines
- Final NSPS for Compression Engines
- Final Dry Cleaning Residual Risk Rule
- Final National Ambient Air Quality Standards (NAAQS) for Particulate Matter
- Control Technique Guidelines for Group II Consumer or Commercial Product Categories on the CAA Section 183(e) list.
- Proposed NSPS for Equipment Leaks of VOC in the Synthetic Organic Chemical Manufacturing Industry
- Proposed NSPS for Equipment Leaks of VOC in Petroleum Refineries
- Proposed National Emission Standards for Hazardous Air pollutants (NESHAP) for Gasoline Distribution Bulk Terminals, Bulk Plants, Pipeline Facilities, and Gasoline Dispensing Facilities Source Categories
- Proposed NESHAP for Hospital Ethylene Oxide Sterilizers Source categoryj. Final Maximum Achievable Control Technology (MACT) Standard for Portland Cement Facilities
- Final NESHAP for Polyvinyl Chloride and Copolymers Production, Primary Copper Smelting, Secondary Copper Smelting, and Primary Nonferrous Metals--Zinc, Cadmium, and Beryllium Area Sources
- Final HON Source Category Residual Risk Rule
- Final NESHAP for Oil and Gas Production Area Source Rule
- Proposed response to court remand of Hosptial, Medical and Infectious Waste Incinerators NSPS/MACT

Id. ¶ 13.

**Plaintiffs' Response to Fact 8:**

The facts stated in paragraph 8 are material and not disputed, though incomplete. In addition to spending significant resources meeting court-ordered and consent decree deadlines, OAQPS has also devoted resources to the following actions that were not mandated by statute, court order or consent decree. For example, EPA has devoted its resources to redesignating areas from nonattainment of the National Ambient Air Quality Standards to attainment. See e.g. 71 Fed. Reg. 27,631 (May 12, 2006)(response required by July, 2007, but completed over a year earlier than required by statute), 72 Fed. Reg. 1,956 (Jan. 17, 2007)(response required by May, 2008 but completed over a year earlier). EPA has also spent considerable resources extending the Early Action Compacts that allow areas across the county to avoid compliance with nonattainment area emission limitations and other pollution reducing measures for the 8-hour

ozone standard. See 71 Fed. Reg. 69,022 (November 29, 2006). Moreover, EPA has expended resources drafting regulatory revisions designed to roll back environmental regulations on air pollution sources. See 71 Fed. Reg. 54,235 (Sept. 14, 2006) (proposing revisions to the emission tests used to determine whether modifications made to existing facilities trigger Clean Air Act prevention of significant deterioration and new source review requirements for that facility).

Defendant's Fact 9:

Between April 2006 and January 2007, EPA has been diligently working to respond to the Title V petition in this case and has taken the following steps to respond to the petition:

- Regional, OGC, OECA and OAQPS staff conducted numerous internal discussions and deliberations on the substantive issues raised by plaintiff's petitions.
- Regional staff prepared and circulated among the various Headquarters' offices, for review and comment a preliminary draft of the Order responding to the petition and in response to comments from the various headquarters offices, revised the draft order numerous times.
- Agency staff discussed issues raised by the petition with the State of South Dakota.
- Regional staff submitted a final recommended decision package to OAQPS, OGC, and OECA for management review and concurrence.
- Staff in OAQPS, OECA, OGC conducted initial briefings for their respective management on the recommended decision package.

Id. ¶ 24.

**Plaintiffs' Response to Fact 9:**

The facts stated in paragraph 9 are material and not disputed.

Defendant's Fact 10:

EPA has carefully considered the amount of time EPA would require to complete the response to the petition. Id. ¶ 26. It will take 60 days to resolve the issues presented by the petition, prepare a final package for the Administrator's review and obtain final review and signature by the Administrator. Id.

**Plaintiffs' Response to Fact 10:**

The facts stated in paragraph 10 are material and not disputed.

Defendant's Fact 11:

A 60-day period will allow the following additional steps to be completed:

> • Completion of management review. This step involves scheduling and holding a meeting or meetings between upper management of the various offices to resolve outstanding legal and policy issues.
> • Revision of the recommended order to incorporate any changes resulting from final management review.
> • Schedule and conduct a briefing for the Administrator and/or his staff
> • Review and signature by the Administrator. Id.

**Plaintiffs' Response to Fact 11**

The facts stated in paragraph 11 are material and not disputed.

Defendant's Fact 12:

The 10 day period proposed by the plaintiffs is impractical due to the complex and important legal and policies issues raised by the petition and management level review and coordination that must be completed before the petition response can be finalized. Id.

**Plaintiffs' Response**

The facts stated in paragraph 12 are material and disputed.  The 10 day period referred to in paragraph 12 was proposed as counted from the date of the entry of an Order by this Court compelling EPA's response to Plaintiffs' Petition.  EPA has not presented facts to show that compliance with that schedule is impractical as 10 days from the date of entry of an Order in this case can very well be the same time as 60 days from the date of EPA's Declaration of Gregory Green.

7

        Respectfully submitted,

        ___/s_____
        Robert Ukeiley (MD14062)
        Law Office of Robert Ukeiley
        435R Chestnut Street, Suite 1
        Berea, KY 40403
        Tel: (859) 986-5402
        Fax: (866) 618-1017
        E-mail: rukeiley@igc.org

        Counsel for Plaintiffs

DATED:  February 12, 2007